## Harrison's Executor *vs.* Stockton's Executor and another.

Richard Stockton, by his will, directed the residue of his personal estate to be paid over to trustees, upon the following (among other) trusts: " And upon the further trust, that after the determination of my wife's interest in said fund, the same be divided into four equal parts, and that they pay over the interest, from time to time, of one fourth part unto my daughter, Mary Harrison; one fourth part unto my daughter, Caroline Rotch; one fourth part unto my daughter, Julia; and one fourth part unto my daughter, Annis Thomson. And I further direct and will, that the above bequests to my married daughters, including also my daughter Julia, if she should be married, be secured for their own separate use, respectively, without being under the control or liable for the debts of their husbands, and that their receipts be deemed good and effectual, notwithstanding their coverture. Which trusts are to continue for the joint lives of my said married daughters and their husbands, respectively; and if they outlive their husbands, then in trust for my said daughters, respectively; and if they die before their husbands, then to their children, if they have any, in equal shares; and if they die without leaving children, or the representatives of children, then in trust for my surviving daughters, in equal shares." Mrs. Thomson died without issue, in the lifetime of her husband, and leaving her sisters, her surviving. The other daughters survived their husbands. *Held*—that at Mrs Thomson's death, one third of her share vested absolutely in each of her surviving sisters; and that the share of each of them, (including the part derived from Mrs. Thomson,) on the death of her husband, vested in her absolutely.

The bill is filed by the executor of one of the daughters of Richard Stockton, deceased, a legatee under his will, for an account, and the payment of the amount due to her under the will. The argument was had upon the bill and answers, and by agreement between counsel, was confined to the construction of the will of the testator; all other questions that may arise, to be reserved for future discussion and consideration.

Richard Stockton, the testator, died March 7th, 1828. By his will, dated January 14th, 1826, he gave to his wife all money on hand, or in bank, all his furniture, plate, carriage, his library, (except his law library and Encyclopedia, which he gave to his sons,) and other chattels. He directed all the residue of his personal estate, after the payment of his debts, to be paid over to Robert F. Stockton and Samuel Bayard, two of his executors, as trustees, upon the trust that they should invest the same at interest on good securities, and pay the interest to his wife during her widowhood. "And upon the further trust, that after the determination of my wife's interest in said fund, that the same be divided into four equal parts; and that they pay over the interest, from time to time, of one fourth part, unto my daughter Mary Harrison, one fourth part unto my daughter Caroline Rotch, one fourth part unto my daughter Julia, and the remaining fourth part unto my daughter Annis Thomson. And I further direct and will, that the above bequests to my married daughters, including also my daughter Julia, if she should be married, be secured for their own separate use, respectively, without being under the control or liable for the debts of their husbands, and that their receipts be deemed good and effectual, notwithstanding their coverture. Which trusts are to continue for the joint lives of my said married daughters and their husbands, respectively; and if they outlive their husbands, then in trust for my said daughters, respectively; and if they die before their husbands, then to their children, if they have any, in equal shares; and if they die

without leaving children, or the representatives of children, then in trust for my surviving daughters, in equal shares."

Mary Stockton, his widow, died in 1837. His daughter Julia was married to Dr. Rhinelander, in the life of Mrs. Stockton, and survived her husband, and died in 1864, without issue. The other daughters were married at the death of the testator. Annis Thomson died March 15th, 1842, without issue, leaving her husband surviving her. Caroline S. Rotch survived her husband, and died in 1856, leaving one daughter, the defendant, Mrs. Mary Hunter. Mary Harrison survived her husband, and died August 9th, 1866, without issue; she left a will, of which the complainant Samuel W. Stockton, is the executor.

Samuel Bayard died May 12th, 1840, and Robert F. Stockton, the surviving trustee, died October, 7th, 1866, leaving a will, of which probate was granted to the defendant John P. Stockton.

The case was argued on the bill and the answers of Mrs. Hunter and Robert F. Stockton's executor.

*Mr. J. Wilson,* for complainant.

We insist that the true meaning of the clause under consideration is:

1. That so long as the husband lives, the *interest* of each daughter's fourth part shall be paid to her.

2. If she *outlive* her husband, she shall take her share absolutely, and the trust be discharged.

3. If she die before her husband, leaving children, then to go to them; if without leaving children, then it is to go over to her surviving sisters.

This was a bequest in fee, or of the absolute and entire beneficial estate, (not for life or a less estate,) in case the daughter outlived her husband.

A bequest of *personal* estate, or a beneficial interest in it, without words of inheritance or limitation, is an estate in fee. Not so with a devise of *real* estate; or, at least, not so at

common law, and before our statute. *Newton* v. *Griffith*, 1 *Harris & Gill* 111, 135 ; *Hope* v. *Taylor*, 1 *Burrows* 268.

It is conceded that the *interest* of the fund is given by the will, and we insist that the rule of law is, that *a bequest of the income of personal estate*, without limit as to time, is equivalent to a gift of the principal. *Philipps* v. *Chamberlaine*, 4 *Ves.* 51 ; *Adamson* v. *Armitage*, 19 *Ves.* 415 ; *Page* v. *Leapingwell*, 18 *Ves.* 463 ; *Elton* v. *Sheppard*, 1 *Brown's Ch. Cas.* 532 ; *Earl and others* v. *Grim and wife*, 1 *Johns. Ch.* 494 ; *Craft* v. *Executors of Snook*, 2 *Beas.* 121 ; *Irwin* v. *Farrer*, 19 *Ves.* 86.

This rule is the same, and applies equally as well, whether the income of the fund be given directly, or through the intervention of trustees. *Haig* v. *Swiney*, 1 *Sim. & Stu.* 487.

The case of *Galland* v. *Leonard*, 1 *Swanst.* 161, is like the present case in its prominent features, (though not depending on the rule last stated,) *viz.* as to disposition over in case of daughter's death, and the effect of it on the estate which was given to the daughters ; *held*, they were entitled to the absolute and entire estate, and not for life only.

We insist, therefore, that *in case the daughter survived her husband*, the *principal* of the fund is given to her ; that it is given *without limitation or restriction*. It is a gift *absolutely* of *the whole* interest or estate in the one fourth, and she takes it to her own use.

*The subsequent provisions are only to operate in case she dies before her husband.* They are in the nature of an executory devise over, in that event. In case she die before her husband, leaving children, then over to them ; if without leaving children, then over to the surviving sisters.

These provisions were necessary in order to save her share of the fund for her children, if she left children, and if she did not, then to preserve it for her surviving sisters.

If this had not been so provided, why then the principal of the fund being given to the daughter, and she taking it *in fee*, her husband, or his creditors, could have taken it, for at that time, by our law, the wife's personal estate could be taken by the husband, it belonged to him. But with this

provision, if she die before her husband it goes to her children, if she leaves any, and if not, then to her sisters; not from her, *but by direct bequest and direction of the will itself.*

Next, as to the shares or portions which come to the surviving sisters, on the death of any one (in the lifetime of her husband) leaving no children.

We insist that they go to the survivors respectively, absolutely, and not subject to any trust, nor to survivorship upon the death of any one taking such portion. *Ex parte West*, 1 *Brown's Ch. Cas.* 575; *Perkins* v. *Micklethwaite*, 1 *P. Wms.* 274; *Crowder* v. *Stone*, 3 *Russ.* 217; 1 *Roper on Legacies* (*2d Am. from 4th Lond. Ed.*) 319 *to* 341; 2 *Jarman on Wills* 620.

Mrs. Thomson died in lifetime of her husband, and left no child. Mrs. Rotch died leaving a child, Mrs. Hunter. Mrs. Rhinelander outlived her husband, and died 14th March, 1864, leaving a will; left no children. Mrs. Harrison outlived her husband, and died August 8th, 1866, leaving no children; she left a will. The present complainant is executor; he is also one of the legatees.

Therefore, we insist that *one third* of Mrs. Thomson's share went, on her death, to Mrs. Harrison absolutely, and not subject to further survivorship; that Mrs. Harrison having outlived her husband, she thereupon became entitled to her own one fourth of the trust fund, absolutely and in fee, and that if Mrs. Harrison has not been paid, (as we charge she has not,) either her own one fourth, or her portion of Mrs. Thomson's one fourth part, her executor has a right to them, and he now claims them.

*Mr. McCarter*, for defendant, Mrs. Hunter.

*Mr. Bradley*, for executor of R. F. Stockton.

*Mr. C. Parker*, in reply.

1. Any daughter under this will, who survived her husband, became, at his death, entitled to receive one fourth of the

trust fund as her own, free of any trust. The direction is: after the death of Mrs. Stockton, divide the fund into four equal parts, and pay the interest of one fourth to Mrs. Harrison, one fourth to Julia, one fourth to Caroline, one fourth to Annis. Shares being thus created, each daughter is to be paid on her separate receipt. And the trust is to continue—how long? During the joint lives of the daughters and their husbands—that is, up to the time when their *joint* life ends.

Suppose the will stopped there, what would become of the principal thus divided off for each daughter on the death of her husband? Clearly, it would be hers, without any further trust. The limitation on the management ceasing, it becomes a naked trust for the daughter.

Where the produce of a fund is thus devised, the fund passes. 2 *Roper on Leg.* 1476, *and cases cited; Hawkins on Construction of Wills* 123, 227.

This being so, the daughter who survives her husband takes the estate absolutely. The trust has ceased. Whose is this share "divided" off as her's, if she be not entitled to claim it? See further on this point, *Elton* v. *Sheppard,* 1 *Bro. C. C.* 532; *Haig* v. *Swiney,* 1 *Sim. & Stu.* 487; *Blann* v. *Bell,* 2 *DeG., M. & G.* 775; *Adamson* v. *Armitage,* 19 *Ves.* 418; *Page* v. *Leapingwell,* 18 *Ves.* 463; *Humphrey* v. *Humphrey,* 1 *Sim. N. S.* 536; *Clough* v. *Wynne,* 2 *Madd.* 188 (439); *Bringhurst* v. *Cuthbert,* 6 *Binn.* 399; *Garret* v. *Rex,* 6 *Watts* 14; *Craft* v. *Snook,* 2 *Beas.* 121; 13 *Ves.* 45; 9 *Ves.* 177; 5 *Price* 263.

The context corroborates this conclusion. What contingencies presented themselves to the testator, and what were his natural views and wishes? 1. He wished to provide for his daughters, completely? 2. But *not* for their husbands.

Now, they might survive their husbands, or die during coverture. And so he says, "if they survive, then in trust for my daughters." But if they died before their husbands, they might, or might not, leave children. He contemplates both these contingencies, and meets them. "If they die

before their husbands, then to their children, if they have any; if (they die) without leaving children, then in trust for my surviving daughters, in equal shares." Leave out the repeated words, "they die," in the last clause, which are not at all necessary to the sense, and all doubt as to the will vanishes.

The thing spoken of is the fund, not the interest. As the trust respecting each share ceased by the death of either party, whose *joint* lives continued it, the holding of one fourth of the fund in trust came to an end, and it had to be paid over.

2. It is urged that the daughters might marry again. But that was a remote contingency, for which the testator might well omit to provide. At any rate, he has made this omission, for the phrase directing "if they outlive their husbands, then in trust for my said daughters, respectively," is the creation of a naked trust, which authorized the daughters immediately to demand the share.

3. The insistment that the fund remained for the last surviving daughter who had children, has no foundation. Children are only to take their mother's share, if she dies during coverture. That is all that is said about them.

4. The will conveys an estate to each daughter in the fund, subject to an executory devise over to survivors, if she dies during her husband's life without leaving issue.

Each survivor then is entitled to one third of her one fourth, and there is nothing to keep *that* in trust. The "joint life" has ended. *Hawkins on Const. of Wills* 268; *Ex parte West,* 1 *Bro. C. C.* 575; *Crowder* v. *Stone,* 3 *Russ.* 217; *Douglass* v. *Andrews,* 14 *B.* 347; *per Lord Hardwicke,* 3 *Atk.* 80; *Bright* v. *Rowe,* 3 *Mylne & K.* 316; *Goodwin* v. *Finlayson,* 25 *B.* 65; *McKay* v. *Hendon,* 3 *Murphy* 21; *Lorillard* v. *Coster,* 5 *Paige* 172; *Stover* v. *Coster,* 1 *Brisbin's Eq.* 121.

5. The view that the testator died intestate as to the principal of this fund, or that it passed by the residuary clause, is evidently false. The citations show that he gave the principal when he gave the interest, absolutely and without

limitation, to his daughters. The residuary clause relied on was intended by this wise lawyer to meet contingencies of *subsequently acquired and lapsed* property.

THE CHANCELLOR.

The counsel of the complainant contend, that under this will, the share of Annis Thomson, upon her death, vested in her three sisters, equally; and that upon the death of the husband of each of the other daughters of the testator, who all survived their husbands, the share of such daughter vested in herself, and in both cases the right became absolute, and free from all further limitations.

The counsel of Mrs. Hunter contends, that upon the death of Mrs. Rhinelander and of Mrs. Harrison, who both died without issue, their respective shares vested in their surviving sisters, and the issue of such sister as had died leaving issue; that the words in the last clause of the limitation, "if they die without leaving children," refers as well to those who survived their husbands, as to the one who died in the life of her husband, and that the share of Mrs. Thomson, on her death, became subject to the same limitation, and that by this construction Mrs. Hunter is entitled to the whole trust estate.

The counsel of the executor of R. F. Stockton contends, that only the interest of the trust fund was given, and that, by the correct construction of the will, no disposition was made of the principal of the share of any daughter who died after her husband, or in the life of her husband, without children, except during the life of the daughter who should die last.

By the settled principles of construction, the gift of the interest of one fourth of the trust fund to Mrs. Harrison, without any limitation as to time, was a gift of the fund itself. If this clause of the will stood alone, without the further direction which follows, to secure the estates of the daughters to their separate use, the one fourth of Mrs. Harrison, as well as the fourth of each of the other daughters,

would have vested in her, absolutely, without limitation over. This puts all four shares upon an equal footing; and there is no ground for the distinction suggested by me upon the argument, that the shares of the other daughters might vest absolutely, while Mrs. Harrison's might not. Had Julia remained unmarried until her mother's death, the fourth given to her would have vested absolutely in her, and would have so continued, notwithstanding her subsequent marriage. But the same result would have followed, had the bequest to her been expressed in the same words as that to Mrs. Harrison.

The settled rule at common law was, that a devise of real estate to any one, without words of limitation, gave only a life estate; words of limitation were needed to enlarge the estate. But a bequest of personal estate, in the same words to a legatee, would vest the absolute estate. But in either case, any provision in the will showing a different intention would change the effect of a gift; in the one case it would enlarge the devise, and in the other it would limit the bequest.

It has long been settled that personal property, both money and chattels, may be bequeathed for life, or any other estate less than the absolute property, and a limitation over after such estate is valid. In case a life estate, or other less estate is given in chattels, the donee of the particular interest is entitled to the possession and use of the goods, but if such estate is given in money, productive investments, or funds, the donee is entitled to the interest or income only, and the principal is retained by the trustees or executors.

In this will, the further direction with regard to these shares is inconsistent with an absolute estate in the married daughters. The testator intended to dispose of the share himself, at the end of the coverture of his married daughters, respectively, and has clearly expressed this intention by disposing of it at that time. He has done so with great particularity and precision, providing for three different situations, the only ones that could exist. If a daughter died before her husband, leaving children, he gave it to them in

equal shares; if she died before her husband, leaving no children, he gave it to his surviving daughters; if she survived her husband, he gave it to her absolutely. The first two dispositions are essentially inconsistent with the daughter having taken an absolute interest in her fourth, and the third might be defeated by the husband exercising his marital right, and reducing the property into his possession, which he could do with his wife's assent, notwithstanding the provision to secure it to her separate use.

This disposition made by the testator, qualifies the rule, that a simple bequest of personal property gives the absolute right; it is the application of the proviso attached to that rule, " unless a different intention appears in the will." Such intention qualifies it *pro tanto*, and to that extent only.

A question was raised as to the effect of the words, " if they outlive their husbands, then in trust for my said daughters, respectively." It was contended that this must be taken only as a gift of the interest, and then it would be only for their lives, and the principal would be undisposed of. This result could not follow; the two rules above mentioned would prevent it. If it was a gift of the interest only, by express words, yet it is without limitation for life, or any other period; and an indefinite or perpetual gift of the interest is a gift of the principal. But it is in plain terms a gift of the principal. The bequests were expressly limited in trust for the separate use of the married daughters, and the duration of this trust was precisely defined by the words, " which trusts are to continue during the joint lives of my said married daughters, and their husbands, respectively." Here the trust ends, and the object of leaving it to trustees ends. Then he declares the share to be "in trust for my said daughter." This amounts to a simple bequest. The words are peculiarly proper to bequeath money held by trustees. Such a declaration of trust in a will or other document executes itself, and vests the property in the *cestui que trust*. The limitation over in the case of any daughter dying without issue, only refers to such death in the life of her

husband; it is the natural meaning of the words from their collocation or situation in the sentence; it follows the other alternative, in case of her dying before her husband; such death must be with children or without, and here the provision for the latter case follows right after that for the former, whilst the mind of the testator was contemplating the two alternatives. The language might have been more definite; so may almost any provision in every will; but it requires much critical acumen to suggest the doubt. The other construction would be inconsistent with the previous provision, which gives to each daughter her share absolutely, if she should outlive her husband. It could never be paid to her in her life, because it could not be known until her death that she would not die without children.

I am of opinion, that at Mrs. Thomson's death, one third of her share vested absolutely in each of her surviving sisters; and that the share of each of them, including the part derived from Mrs. Thomson, on the death of her husband, vested in her absolutely. This will require that the personal representatives of Mrs. Rotch be made party to this suit.